**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | } | |
| | } | |
| Dianna Phillis Cook, | } | Case No. 07-40947-JJR7 |
| | } | |
| Debtor. | } | |
| | } | |

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on the Motion for Relief From Stay (the "Motion") filed

by Bobby Dale Welch Construction Company, L.L.C. ("Welch"). The Court has jurisdiction to hear

this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended,

entered by the United States District Court for the Northern District of Alabama. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final

order. For the reasons stated below, the Court is denying the relief sought in the Motion. In

compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure,[1] the following shall

constitute the Court's findings of fact and conclusions of law.


FINDINGS OF FACTS:

The facts are undisputed and for the most part can be taken from the Motion and the Exhibits

thereto, and the pleadings and other records maintained in the Court's file. On April 29, 2005,

Dianna Phillis Cook (the "Debtor") and Welch entered into a Contractor Agreement (Exhibit A to

---

[1] A Rule of the Federal Rules of Bankruptcy Procedure is referred to or cited herein as a "Rule."

Case 07-40947-JJR7    Doc 74    Filed 01/11/08    Entered 01/11/08 16:25:25    Desc Main
Document      Page 1 of 22

the Motion, and herein the "Agreement"),[2] under the terms of which Welch was to construct a home on the Debtor's property located in Etowah County, Alabama (the "Property"). The Debtor allegedly failed to pay the sums due under the Agreement, and on December 12, 2005, Welch filed a Lien (Exhibit B to the Motion, and herein the "Verified Statement of Lien") with the Office of the Judge of Probate of Etowah County, Alabama. In the Verified Statement of Lien, Welch claimed a mechanic's lien on the Property "to secure an indebtedness of $73,275.41 with interest from the 29th day of April, 2005, for materials supplied pursuant to the contract for construction of a new home . . . ."

The Agreement contained an arbitration provision stating, "All disputes hereunder shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association." Pursuant to this provision, on June 14, 2006, Welch made a Demand for Arbitration (Exhibit C to the Motion, and herein the "Arbitration Demand") naming the Debtor as respondent. In the Arbitration Demand, Welch inserted $98,112.76 as the "DOLLAR AMOUNT OF CLAIM," and described "OTHER RELIEF SOUGHT" as "Plus interest, attorneys' fees & costs." The Arbitration Demand described the dispute as involving "an agreement for the construction of a home," and the Debtor's refusal to pay the amounts due to Welch. There was no mention in the Arbitration Demand of any claim for a mechanic's lien, although one of the 43 exhibits described

---

[2] The Agreement was actually between the Debtor as "Owners" and Bobby Dale Welch as "Contractor." Welch was not identified in the Agreement as a LLC or limited liability company, and he appears to have entered into the Agreement in his individual capacity. Similarly, Welch executed the Verified Statement of Lien (defined and discussed *infra*) in his individual capacity. Welch was identified in the Arbitration Demand (defined and discussed *infra*) as "BD Welch Construction." Welch was first identified as a "LLC" in the Arbitration Award (defined and discussed *infra*). In the Arbitration Award the arbitrator found "it was undisputed that the correct legal name of the claimant is Bobby Dale Welch Construction, LLC." Accordingly, at least as between Welch and the Debtor, any issue regarding the real party in interest who is the holder the alleged mechanic's lien and debt secured thereby was adjudicated in the arbitration proceedings discussed below.

-2-

on Welch's Exhibit List in the arbitration proceedings was listed as a "Lien recorded with Probate Judge of Etowah County."

An arbitration proceeding was conducted on May 2, 2007, and on May 11, 2007, the arbitrator handed down his Award of Arbitrator (Exhibit D to the Motion, and herein the "Arbitration Award") in which he found Welch was entitled to recover $98,112.76 from the Debtor for sums due under the Agreement, plus interest at 12% from July 1, 2007; the arbitrator apportioned the fees and expenses of the arbitration between the parties. There was no mention of any mechanic's lien securing the Arbitration Award, and the last sentence of the Arbitration Award read, "This award is in full settlement of all claims submitted to the arbitrator, and all other claims and counterclaims of the parties not expressly granted herein are denied."

On May 22, 2007, Welch filed with the Circuit Court of Etowah County, Alabama an Application to Confirm Arbitration Award (Exhibit E to the Motion, and herein the "Circuit Court Application"). In the Circuit Court Application, Welch asked the circuit court to confirm the "Award as enforceable as a judgment upon which execution may issue." There was no request in the Circuit Court Application for the enforcement of a mechanic's lien or any mention of a lien securing the Arbitration Award. Apparently, the circuit court entered an order dated May 22, 2007 granting the relief sought by Welch in the Circuit Court Application; however, this Court was not furnished with a copy of the May 22, 2007 Order.

The Debtor filed her chapter 7 bankruptcy petition on May 31, 2007. On September 24, 2007, Welch filed a Motion to Amend Petition and Order Confirming Arbitration Award (Exhibit F to the Motion, and herein the "Amended Petition"). In the Amended Petition, Welch recognized that neither the Circuit Court Application nor the circuit court's order granting such Application

Case 07-40947-JJR7    Doc 74    Filed 01/11/08    Entered 01/11/08 16:25:25    Desc Main
Document      Page 3 of 22

made any mention of the Arbitration Award being secured by a mechanic's lien, and asked the circuit court to amend its order of May 22, 2007 "to reduce to judgment [Welch's] claim for a mechanic's lien against the property of the [Debtor] described in the attached notice of lien . . . ." Because the automatic stay was and remains in effect, this Court assumes the circuit court did not enter an order on the Amended Petition or any further orders relating to the Arbitration Award or Welch's sought-after mechanic's lien.

Finally, Welch filed with this Court, a pleading titled Supplemental Authorities in Support of Motion For Relief From Stay (the "Supplement") in which Welch argued, "The bankruptcy court should abstain from deciding the perfection issue to allow the state court or the arbitrator to complete the award or resolve the ambiguity." This Court interprets the Motion and the Supplement as together requesting relief from the stay or abstention by this Court, to allow Welch not only to take the steps necessary to perfect or maintain his mechanic's lien under applicable state law, but also to allow the state circuit court to go forward with the establishment and enforcement of the lien, which will require an adjudication of the validity and extent of the lien.[3]

On July 30, 2007, the Chapter 7 Bankruptcy Trustee in this case, Rocco J. Leo (the "Trustee"), filed a Final Report of Trustee in No Asset Case; however, on August 6, 2007, the Trustee filed a Notice of Withdrawal of Final Report. Thus, the Property remains property of the bankruptcy estate under Section 1306 of the Bankruptcy Code.[4]

---

[3] On October 3, 2007, Welch filed an adversary proceeding against the Debtor. The complaint's allegations include a request for an exception of the Arbitration Award from discharge pursuant to Section 523(a) and denial of discharge under Section 727.

[4] 11 U.S.C. § 101 *et seq*, and herein the "Code." Absent a contrary indication, all "Section" references are to a section or subsection of the Code.

-4-

<u>CONCLUSIONS OF LAW</u>:

<u>Relief From Automatic Stay</u>

Welch was an original, or general contractor under the Agreement with the Debtor. A general contractor is required to take two steps to maintain his inchoate mechanic's lien for any unpaid balance due on a construction contract involving Alabama real property. First, he must file a verified statement of lien in proper form and containing the statutorily required information with the office of the judge of probate of the county where the construction project is located.[5] ALA. CODE § 35-11-213 (1975); *Metro Bank v. Henderson's Builders Supply Co., Inc.*, 613 So. 2d 339 (Ala. 1993). The verified statement must be filed by a general contractor within six months after the last work was performed or last item of materials furnished under the contract.[6] ALA. CODE § 35-11-215 (1975). Second, within six months after the maturity of the debt secured by the inchoate lien, the contractor must commence an action in circuit court seeking the enforcement of his lien. ALA. CODE §§ 35-11-220, 221, 222 (1975); *Metro Bank*, *supra*.

If the property in which a mechanic's lien is claimed is property of a bankruptcy estate or a

---

[5] If Welch was a subcontractor and not a general contractor, before filing his verified statement of lien, he would have been required to give notice to the Debtor that he claimed a lien, the amount thereof, and for what and from whom it is owing. ALA. CODE § 35-11-218 (1975). A subcontractor's lien is limited to the unpaid balance owing by the property owner to the general contractor for whom the subcontractor performed work or supplied materials, unless the subcontractor is a materialman who gave advance notice to the owner before delivering the materials. *Id.* at §§ 35-11-210, 218.

[6] Lien claimants, other than general contractors, journeymen and day laborers, must file their verified statements of lien within four months after the last work was performed or last materials furnished. These lien claimants usually fall within the category of subcontractors, i.e. contractors and materialmen who performed work or supplied materials under agreements with the general contractor. Journeymen and day laborers have only 30 days to file their verified statement of liens. ALA. CODE § 35-11-215 (1975).

-5-

debtor's property, Sections 362(a)(4) and (5) stay any act to create, perfect or enforce such lien.[7]

Nonetheless, Section 362(b)(3) excludes from such stay "any act to perfect, or to maintain or continue the perfection of, an interest [including a mechanic's lien] in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) [of the Code] . . . ." Section 546(b)(1)(A) provides that the rights of the trustee "are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection."

A mechanic's lien under Alabama law attaches to the property being improved when the work is performed or materials are delivered, and the lien is maintained or perfected by a general contractor when he files a verified statement of the lien with the county probate office and commences an action to enforce the lien with the circuit court, both within the time limits imposed by the applicable Alabama Code sections cited above. Anyone acquiring rights in the property after the mechanic's lien attaches, albeit before the lien is perfected, will be subject to the lien if it is later perfected. *Metro Bank*, *supra*; *Greene v. Thompson*, 554 So. 2d. 376 (Ala. 1989). The law of Alabama establishing mechanics' liens is a "generally applicable law" falling within Section 546(b) because it allows a contractor, such as Welch, to acquire an inchoate lien against property before the date of perfection; subsequent perfection causes the lien to relate back to the time of its attachment and have priority over someone, including a chapter 7 trustee, who acquires rights in the property between such attachment and perfection. *In re Neylon*, 18 B.R. 765 (Bankr. S.D. Ala. 1982); *see also, WWG Indus., Inc. v. United Textiles (In re WWG Indus., Inc.)*, 772 F.2d 810 (11th Cir. 1985).

_____

[7] Unlike property of the estate, the stay prohibits the creation, perfection and enforcement of liens against a debtor's property only to the extent the lien secures a prepetition claim. 11 U.S.C. § 362(a)(5).

-6-

Welch filed his Amended Petition after the Debtor filed bankruptcy and without first seeking stay relief. In the Amended Petition, Welch asked the circuit court "to reduce to judgment [Welch's] claim for a mechanic's lien against the property of the [Debtor] described in the attached notice of lien . . . ." The Amended Petition was an obvious attempt by Welch to establish, perfect and enforce his lien against the Property.[8]

If an Alabama mechanic's lien is otherwise valid, it is perfected when the action to enforce it is commenced; perfection and enforcement cannot be separated and are accomplished together. Section 362(b)(3) makes an exception to the automatic stay for acts taken to maintain and perfect a lien, but there is no exception for enforcement. Requesting the state circuit court to enter a judgment awarding a mechanic's lien in favor of a creditor and against property of the estate is not merely maintenance or perfection of the lien, it is tantamount to enforcement of the lien. The Alabama mechanic's lien statute expressly states the action is to *enforce* the lien. ALA. CODE §§ 35-11-220, 221, 222 (1975).[9] Section 35-11-224 of the Alabama Code describes the consequences of a court finding the claimant has established his entitlement to a mechanic's lien:

_____

[8]  The term "perfection" is not found in the Alabama mechanic's lien statute, although courts often refer to the commencement of an enforcement action as necessary to "perfect" the lien. *Hutto Constr., Inc. v. Buffalo Holdings, LLC*, 488 F.Supp.2d 1180 (M.D. Ala. 2007) ("Because a central purpose of any lien is to preserve an interest in property and give notice to subsequent purchasers that they take the property subject to the lien, a materialman's lien remains inchoate, or unattached to the property, until 'action is taken to perfect and enforce it.' [citation omitted]; *see also United States v. Costas*, 273 Ala. 445, 142 So. 2d 699, 701 (1962) ('A materialman's or mechanic's lien ... remains inchoate and loses all force and vitality unless suit is brought and prosecuted to final judgment.')"); *SouthTrust Bank of Dothan, N.A. v. Hornsby*, 555 So. 2d 1107 (Ala. App. 1989) (finding lien was lost when creditor failed to timely file suit to perfect his lien).

[9]  "[A]ctions for the *enforcement* of liens . . . may be brought in the circuit court having jurisdiction in the county in which the property is situated." ALA. CODE § 35-11-220 (1975). "Any action for the *enforcement* of the lien declared in this division . . ." *Id.*.at § 35-11-221. "The complaint . . . shall allege the facts necessary to entitle the plaintiff to the lien and the *enforcement* thereof . . ." *Id.* § 35-11-222.

> Any defendant, by appropriate plea, may put in issue the fact of indebtedness or the existence of the lien, or both, and may interpose any other defense applicable to the action; and if the court by its finding, or the jury by their verdict, as the case may be, ascertain that the plaintiff has a lien as claimed, judgment shall be entered for the amount secured thereby, interest and costs, against the party liable for the same, and establishing the lien, and condemning the property to sale for the satisfaction thereof;

ALA. CODE § 35-11-224 (1975).

The statute does not provide for a claimant to first establish he is entitled to a lien, and thereafter prove he is entitled to enforce the lien by condemnation and sale of the property. The claimant is entitled to both or neither. *Lily Flagg Bldg. Supply Co. v. J.M. Medlin Co.*, 285 Ala. 402, 405, 232 So. 2d. 643 (1970) ("It seems to be well settled that a materialman's or mechanic's lien . . . is not perfected until every requirement of the statutes creating such lien has been complied with, and such lien remains inchoate and loses all force and vitality unless suit is brought and prosecuted to final judgment. *United States v. Costas*, 273 Ala. 445, 142 So.2d 699 (1962), and the many cases there cited.").

As discussed above, an Alabama mechanic's lien is an interest in property subject to maintenance and perfection under Section 546(b), and while postpetition *perfection* is allowed as an exception to the stay under Section 362(b)(3), there is no similar exception for postpetition *enforcement*. At first glance, this appears to create a "Catch 22" situation for an Alabama mechanic's lien claimant who is required to perfect his inchoate lien by commencing an enforcement action, the latter being a violation of the automatic stay. However, the Code supplies a solution:

> If . . . a law requires . . . commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and . . . such an action has not been commenced before the date of the filing of the petition; such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for . . . such commencement.

-8-

Section 546(b)(2).

In *Village Nurseries v. Gould* (*In re Baldwin Builders*), the Bankruptcy Appellant Panel found perfection under California mechanic's lien law required commencement of an enforcement action, which appears to be similar to that required under Alabama law. 232 B.R. 406 (B.A.P. 9th Cir. 1999). The B.A.P. held that while postpetition commencement of such an action was prohibited, Section 546(b)(2) allowed notice to be substituted for commencement of an action:

> Under California law, the filing of a foreclosure suit, an enforcement action, is required to maintain the perfection of a [mechanic's] lien: if no suit is timely filed, the lien becomes void. Section 546(b) unambiguously mandates that, if commencement of an action is required to maintain or continue perfection, notice shall be given instead.
>      . . . .
> When commencement of an action is required to perfect or to maintain or continue perfection, a claimant is instructed by § 546(b)(2) to accomplish such perfection or continuance or maintenance by "giving notice." The Code does not specify what the notice must contain or to whom it should be given, nor that the notice must be filed in the bankruptcy court.

232 B.R. at 411, 413. *See also, Ryan v. Grayson Serv., Inc.* (*In re Rincon Island Ltd. P'ship*), 253 B.R. 880, 884 (Bankr. C.D. Cal. 2000) ("In bankruptcy cases if commencement of an action is required to maintain or continue perfection, § 546(b) unambiguously mandates that notice shall be given instead.").

Unless stay relief is first obtained, the commencement or continuation of any litigation to enforce a prepetition claim, or lien securing such claim against property of the estate is prohibited and constitutes a violation of the automatic stay. *See*, *Roofing Concepts, Inc. v. Kenyon Industries, Inc. (In re Coated Sales, Inc.)*, 147 B.R. 842, 845 (S.D. N.Y. 1992) (filing petition in state court to enforce mechanic's lien, although a predicate to perfection, was prohibited and violated the automatic stay). Actions that violate the automatic stay are void and without force or effect. *Id.* In

-9-

this case, Welch's postpetition filing of the Amended Petition with the circuit court seeking the establishment, and hence enforcement, of his lien under Alabama law, violated the automatic stay and is, therefore, void. In lieu of filing the Amended Petition, which was tantamount to commencing, or at least continuing litigation against the Debtor and Property of the estate, Welch should have given notice pursuant to Section 546(b)(2). Although it appears the statute of limitations for perfection has now expired,[10] if Welch believes there are additional steps needed to complete the perfection, maintenance or continuation of his lien, Section 362(b)(3) allows him to take those steps without stay relief. If one of those steps is commencement of an action, giving sufficient notice is the required substitute under Section 546(b)(2) where such action is for both the perfection and enforcement of the lien, as it is under Alabama law.

Welch requested that the stay be lifted to allow him to return to state circuit court to establish his lien. He has no need to return to state court. Sections 362(b)(3) and 546(b)(2) provide the means for Welch to maintain and perfect his lien outside of state court and without stay relief. His request is not based on lack of adequate protection due to the Property's depreciation, risk of loss, threat of

---

[10] *See, Home Fed. Sav. & Loan Ass'n v. Williams*, 276 Ala. 37, 158 So.2d 678 (1963) (indebtedness due to plumber for work performed matured more than six months prior to plumber's initiating lawsuit to enforce liens, thus the liens were unenforceable); *see also, Sorsby v. Woodlawn Lumber Co.,* 202 Ala. 566, 81 So. 68 (1919) (lien claims against parties added after expiration of six month statute of limitations do not relate back to commencement of action).

Some authorities have held that Section 108(c) suspends the statute of limitations for commencement of an action to perfect and enforce a mechanic's lien. *See, e.g., Concrete Structures, Inc. v. Tidewater Crane & Rigging* Co. (In re Concrete Structures, Inc.), 261 B.R. 627 (E.D. Va. 2001). *Contra, In re Worldcom, Inc.,* 362 B.R. 96, n.33 (Bankr. S.D. N.Y. 2007) ("One commentator has noted that the case law regarding this issue is complex and under the current case law it is uncertain whether subsequent to the 1994 Amendment, section 108(c) tolls the commencement of an enforcement action to maintain or continue perfection. . . . Nevertheless, the requirement imposed on the lienholder by section 546(b) as amended – the timely giving of notice in lieu of filing an action to continue the perfection of a lien – uses the mandatory word "*shall*," suggesting that the notice is not simply an optional alternative that the lienholder can employ to maintain the perfection of its lien. . . . However, it appears to the Court that if sections 362(b)(3) and 546(b)(2) were applicable, section 108(c) would not have tolled the Statute of Limitations." (citations omitted) (emphasis in original)).

foreclosure by a superior lienholder, or the like.  Should Welch amend his request and allege lack of adequate protection, he will be required to first prove he has an interest in the Property (i.e. a mechanic's lien), which entitles him to adequate protection.  Based on what was presented to the Court for consideration of Welch's Motion, it is questionable whether he holds such an interest.

<u>Abstention</u>

Before a lien on property can be enforced, three issues must be addressed:  (1) the validity of the lien (because an invalid lien is not enforceable); (2) the extent of the property covered by the lien and the extent of the debt secured by the lien; and (3) if there are competing interests in the property, the priority of the lien.  Determinations of the validity, extent and priority of liens are all core proceedings within the bankruptcy court's jurisdiction. 28 U.S.C. § 157(b)(2)(K).  Additionally, a resolution of these issues will result in the claim allegedly secured by a mechanic's lien being either allowed or disallowed as a secured claim, which is also a core proceeding. *Id.* at 157(b)(2)(B); Sections 501, 506.

If a mechanic's lien is not valid, the steps taken to perfect it are for naught.  A valid lien may remain unperfected (e.g. unrecorded mortgage); however, the law does not recognize an invalid, albeit perfected, lien.  Thus, validity must be determined before or at the same time as perfection. Similarly, a determination of the respective priorities of competing liens and the extent of the property they encompass and debt they secure requires an examination of each lien's perfection, including the time when perfection was accomplished.  A lien may extend to one portion of the estate's property but not another, and it may secure part, but not all, of a creditor's debt.  For example, a creditor's security interest may cover accounts, inventory and equipment, but his UCC

-11-

financing statement may only cover inventory, thus leaving the security interest in accounts and equipment unperfected. The same creditor may hold two promissory notes, but the language in his security agreement may only cover one note and not the other, or it may secure principal and not interest. A contractor may assert a mechanic's lien on a construction project located on several acres in Alabama; however, his verified statement of lien may be deficient if it describes only a portion of the underlying property, or the property owner may dispute the extent of the unpaid balance owing on the construction contract and the validity of the lien. All are issues needing resolution by a court before the lien can be enforced.

In his Supplemental Motion, Welch argues the "bankruptcy court should abstain from deciding the perfection issue to allow the state court or the arbitrator to complete the award or resolve the ambiguity." The Court assumes the ambiguity is whether Welch's Verified Statement of Lien, his Arbitration Demand, his Amended Petition, and other measures taken with respect to the mechanic's lien were sufficient and timely to perfect the lien. This Bankruptcy Court is capable of determining whether the lien was properly and timely perfected, which, as discussed above, will require a determination of the lien's validity, extent and priority, and ultimately whether Welch's claim should be allowed, and if so, allowed as a secured or unsecured claim.[11] All are core proceedings under 28 U.S.C. § 157(b).

In the schedules filed with the Debtor's petition for relief, she stated there were two mortgages encumbering the Property. A first mortgage is held by Wells Fargo Home Mortgage in the amount of $125,000, and a second mortgage is held by Compass Bank for $15,000. The Debtor

---

[11] The amount owing by the Debtor under the Agreement was determined by the Arbitration Award.

Case 07-40947-JJR7    Doc 74    Filed 01/11/08    Entered 01/11/08 16:25:25    Desc Main
Document    Page 12 of 22

scheduled Welch as an unsecured creditor. The Debtor valued the Property at $100,000, and in her Statement of Intentions, she proposed to reaffirm the Wells Fargo mortgage but made no mention of the second mortgage held by Compass Bank. The Debtor also claims as exempt her equity of redemption in the Property.

If the Debtor's schedules are accurate, the two mortgages consumed all of the Property's value, and regardless of the perfection, validity, extent or priority of Welch's lien, the Trustee will likely abandon the Property. If the Trustee abandons the Property, a determination of all the issues surrounding Welch's lien will have no material effect on the estate or distribution to creditors. The fight will then be among the two mortgage holders, Welch and possibly the Debtor, and this Bankruptcy Court should seriously consider abstaining from being the forum in which that fight takes place.[12] On the other hand, if the Trustee takes the position that Welch's mechanic's lien and one or both of the mortgages are inferior to the Trustee's interest in the Property, or there is otherwise value in the Property that can be realized for the benefit of creditors and the estate, then this Court will not abstain but rather will retain jurisdiction to decide all core proceedings involving the Property, including the validity, extent and priority of the competing interests in the Property, which will necessarily include the inseparable issue of perfection of such interests.[13]

---

[12] The Court is uncertain of the reason the Trustee withdrew his report of no assets. The reason may have had nothing to do with the Property and may concern other assets. In any event, Welch may want to consider filing a motion pursuant to Section 554(b) and Rule 6007(b) to require the Trustee to abandon the Property.

[13] In his Supplemental Motion, Welch argues that he is the only unsecured creditor listed in the Debtor's schedules, so "This Court's limited resources should not be employed to decide a legal issue of no real consequence to unsecured creditors generally. . . ." This argument ignores that the Property remains in the estate, and assumes the claims of Wells Fargo and Compass will not be challenged by the Trustee. If the Trustee objects to the secured status of these two creditors and is successful, they will have substantial unsecured claims in the case. As mentioned, *supra*, if no such objections are made, the Trustee will likely abandon the estate's interest in the Property, at which time Welch's argument for

-13-

As authority for his request that this Court abstain, Welch cites *Peoples Bank of N. Ala. v. SAIIA Constr., LLC (In re B & M Properties, LLC)*, 342 B.R. 630 (N.D. Ala. 2006) (*reh'g denied,* 346 B.R. 854). The District Court's opinions in *B & M Properties* should be of interest to bankruptcy courts sitting in Alabama and the lawyers who practice in them. The District Court held that the issue of whether a mechanic's lien was perfected must be adjudicated in state court, and 28 U.S.C. § 1334(c) mandates that bankruptcy courts abstain from adjudicating that issue. 342 B.R. at 632. The District Court further held that:

> Mechanic's liens are creatures spawned by state law and brought to fruition as claims secured by an interest in real property under Alabama Code § 35-11-222 exclusively in the state courts. This state-bestowed status is what raises a lien from an inchoate cash claim to a secured property right. By law, this secured status must be established by the state court. The Bankruptcy Court does not have jurisdiction to create this property right.

*Id.*

Even though the District Court in *B & M Properties* held mandatory abstention applied, it went on to hold "the Bankruptcy Court could and should have exercised discretionary abstention under the circumstances of this case [because] . . . [the lien claimant] was apparently forum shopping when it filed the involuntary petition." *Id.* The District Court obviously was very irritated with what it considered blatant forum shopping by the lien claimant who, as mentioned, was also a petitioning creditor in the involuntary bankruptcy petition.[14] It is plausible the District Court's finding of forum

---

abstention gains substantial merit.

[14] "The proceeding is related to a Bankruptcy case only because SAIIA filed an involuntary petition naming B & M as the Debtor. No federal jurisdiction exists for perfection of liens on Alabama property." 342 B.R. at 632. "SAIIA was apparently forum shopping when it filed the involuntary petition. Federal courts are courts of limited jurisdiction, and bankruptcy courts are federal courts of particularly narrow jurisdiction. Federal courts are not meant to be used as an alternative to state courts for snappier service, if counsel can devise a way to come in under the radar." *Id.* at 632-33. "Some

-14-

shopping influenced its ruling that no bankruptcy court jurisdiction existed for perfection of the mechanic's lien. To the extent it makes a difference, in the instant case the Debtor filed a *voluntary* petition and no party in interest has attempted to remove to this Bankruptcy Court any state circuit court action involving Welch's lien. Nonetheless, Welch has asked this Court to abstain from adjudicating whether he is entitled to a lien on the Property and thereby allow the circuit court or possibly the arbitrator to decide that issue.

The District Court's opinions in *B & M Properties* were appealed to the Eleventh Circuit. *Peoples Bank of N. Ala. v. SAIIA Constr., LLC (In re B & M Properties), LLC*, 225 Fed.Appx. 830 (11th Cir. 2007). The Eleventh Circuit reversed and vacated the opinions, and remanded the case with instructions to dismiss the appeal for lack of jurisdiction and remand the case to the bankruptcy court. *Id.* It is unfortunate the Eleventh Circuit did not address the merits of the District Court's opinions. It would have been instructive to know the Eleventh Circuit's view on whether a creditor who commences a state court action to enforce a mechanic's lien, followed by filing an involuntary

---

factors that militate strongly in favor of abstention in the case at bar include . . . *the likelihood that the commencement of the bankruptcy case was forum shopping*." *Id.* at 633 (emphasis in original). "Most significantly, the Bankruptcy Court should have evaluated the train of events for signs of blatant forum shopping. The Bankruptcy Court's failure to abstain was an abuse of discretion." 346 B.R. at 856.

Perhaps the District Court concluded that by first commencing the action in state circuit court, it was improper for SAIIA, the lien claimant, to subsequently file an involuntary bankruptcy petition against the property owner, thereby staying the state court action. Although Peoples Bank, the holder of a mortgage on the property, filed a motion for abstention, there is no mention in the District Court's opinions of whether the circuit court action was removed to bankruptcy court. Nonetheless it is obvious the District Court strongly believed the lien claimant, having chosen the state circuit court forum, should have remained there and not sought to have the perfection of his lien adjudicated in bankruptcy court. There were insufficient facts recited in the District Court's opinions to make too strong an argument supporting the lien claimant's conduct; however, one has to take into consideration that the lien claimant needed to commence the state circuit court action or else his lien would be lost. It may have been more palatable to the District Court if the involuntary bankruptcy petition had been filed before commencing the state court action, followed by the lien claimant's giving notice pursuant to Section 546(b)(2) as the required substitute for commencing the enforcement action required under state law to maintain and perfect the lien.

-15-

petition against the property owner and thereby staying the state action, is guilty of *improper* forum shopping. The Court says "improper" because an involuntary petition is often admitted forum shopping. *See In re Synergistic Tech., Inc.*, 2007 WL 2264700, *7 (Bankr. N.D. Tex. Aug. 6, 2007) ("Sometimes forum shopping is, frankly, fine. It is done all the time. People file bankruptcy to stop foreclosure proceedings. Companies like Texaco file bankruptcy to avoid the appellate process which they cannot afford to wage. Companies or petitioning creditors file to accomplish a more orderly, supervised liquidation of the company than might be accomplished outside the bankruptcy court."). When a creditor discovers his debtor is making preferential payments, providing collateral to rival creditors, suffering default or consent judgments, executing fraudulent transfers, or expending limited resources defending other creditors' lawsuits and foreclosure actions in multiple forums, or when the creditor finds himself in litigation with the debtor and competing creditors in an unfriendly jurisdiction, an involuntary bankruptcy petition against the debtor may be an attractive remedy. If one or more of these circumstances is the reason a creditor files an involuntary petition against a debtor, it may indeed be considered forum shopping. However, it is forum shopping permitted by Congress[15] and is not unlike removal of a civil action to federal district court based on diversity of citizenship of the parties because a defendant is uncomfortable in a foreign state court and believes he will receive a more favorable result in district court.[16]

When bankruptcy intercedes, and property rights controlled by state law and usually litigated in state court are instead litigated in bankruptcy court, the outcome of the litigation should not be different. "Property interests are created and defined by state law. Unless some federal interest

---

[15] Section 303.

[16] 28 U.S.C. §§ 1332(a) and 1441(a).

requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 918 (1979). "A federal court in bankruptcy is not allowed to upend the property law of the state in which it sits, for to do so would encourage forum shopping and allow a party to receive 'a windfall merely by reason of the happenstance of bankruptcy.'"*First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P.)*, 59 F.3d 423, 427 (3d Cir. 1995)(quoting *Butner v. United States*, 99 S.Ct. at 918).

Probably the most important question left unanswered by the Eleventh Circuit in *B & M Properties* is whether an Alabama state court has *exclusive* jurisdiction for the perfection of mechanic's liens on Alabama property. In other words, must a bankruptcy court routinely abstain from adjudicating the issue of perfection when a creditor claims a mechanic's lien against Alabama real property that is also property of a bankruptcy estate? The District Court in *B & M Properties* had no hesitation in concluding, "No federal jurisdiction exists for perfection of liens on Alabama property." 342 B.R. at 632. Federal courts, and in particular bankruptcy courts in other states, have not always deferred to state courts when faced with adjudicating issues involving mechanic's liens, including their perfection. *See, e.g., Village Nurseries, supra.* (finding that under California law, commencing a foreclosure or enforce lawsuit is necessary to maintain perfection of a lien, but when automatic stay prohibits filing suit, creditor must instead give notice under Section 546(b)(2)); *Amtech Lighting Serv. Co. v. Int'l Ass'n of Lighting Mgmt. Co. (In re Payless Cashways, Inc.*), 230 B.R. 120, 136 (Bankr. 8th Cir. 1999) ("The bankruptcy court correctly determined that Amtech failed to timely perfect a mechanics' lien in Minnesota, Oklahoma, Nevada, and Texas."); *In re Terry*, 262 B.R. 657 (Bankr. E.D. Va. 2001) (litigation over enforcement of a mechanic's lien was not necessary

-17-

in state court because the bankruptcy court had jurisdiction over allowance and secured status of claim); *Sachs Elec. Co. v. Bridge Info. Sys., Inc. (In re Bridge Info. Sys., Inc.)*, 288 B.R. 548 (Bankr. E.D. Mo. 2001) (although disputes arising from validity and priority of mechanic's lien are governed by state law, enforcement of such rights in bankruptcy is a matter of federal law); *Town of Colchester v. Hinesburg Sand & Gravel, Inc. (In re APC Constr., Inc.)*, 112 B.R. 89 (Bankr. D.Vt. 1990) (mechanic's lien claimant may take steps to perfect lien under state law, but stay prohibits enforcement).

As discussed above, although Section 362(b)(3) allows a mechanic's lien claimant to take the steps required for perfection, no allowance is made for commencement of an enforcement action, even if such an action is required for perfection, as it is under Alabama law. However, when commencement of an enforcement action is required and bankruptcy intercedes, it is replaced by mandatory notice given pursuant to Section 546(b)(2).[17] The District Court in *B & M Properties* held that "[the lien claimant]'s taking its lien action to judgment in state court is the only way it can perfect its lien. The Bankruptcy Court has no jurisdiction to declare the lien perfected, and, without perfection, the lien is but an inchoate claim." 346 B.R. at 855. If the District Court's holding is to be followed, Section 546(b)(2) will have to be interpreted as having no application when the interest being perfected is an Alabama mechanic's lien. Under such an interpretation, when an Alabama property owner files bankruptcy before the holder of an inchoate mechanic's lien commences an enforcement action in state court, the lienholder could not utilize Section 546(b)(2) to perfect his lien

---

[17] Inasmuch as Section 546(b)(2) is not worded as permissive or as providing a nonexclusive alternative method for perfecting a lien when perfection requires commencement of an action (i.e. "*shall* be perfected . . . by giving notice"), the lien claimant must comply with Section 546(b)(2) or seek stay relief to commence an action in state court.

-18-

and would always be required to obtain stay relief to file suit in state court before the six-month statute of limitations expires. Why should Section 546(b)(2) apply to mechanic's liens being perfected under other states' laws but not Alabama's? [18] *See, e.g., Village Nurseries, supra*.

If it is mandatory that bankruptcy courts routinely abstain and send all parties in interest to state court when faced with perfection of an Alabama mechanic's lien, those parties will be required to litigate core bankruptcy issues in state court. Parties in interest who might unexpectedly find themselves in state court include the trustee who is charged with collecting and liquidating property of the estate;[19] mortgage holders and other competing lien creditors; unsecured creditors, equity security holders, and their committees[20] who may contend the lien is invalid, thereby leaving the property unencumbered and available for liquidation to pay their claims; and the debtor who may have sought bankruptcy relief to escape state court litigation.

An important and beneficial attribute of bankruptcy is its inclusiveness. It gathers all assets of, and claims against, a debtor within one tribunal for administration, liquidation and adjustment. 28 U.S.C. § 157(b)(2). To maintain this inclusiveness, a bankruptcy court has a duty to exercise jurisdiction in matters arising under the Code or arising in a bankruptcy case, unless the court finds

---

[18] Because the steps needed to perfect the mechanic's lien in *B & M Properties* (i.e. notice, filing verified statement of lien and commencement of action) were all performed prepetition, Sections 362(b)(3) and 546(b)(2) were not considered by the District Court in its opinions.

If Section 546(b)(2) has no application in the postpetion perfection of mechanic's liens under Alabama law, a peculiar set of circumstances is likely to arise. Assume a land owner who is indebted to a contractor under a construction contract files a bankruptcy case one day before the six-month statute of limitations for commencing an action to enforce a mechanic's lien is due to expire. The contractor's attorney may have been prepared to file the action in state court before the statute of limitations expires, but is now stayed by Section 362(a)(4). The attorney must now file a motion for stay relief and obtain an order from the bankruptcy court granting such relief, all within 24 hours.

[19] Section 704(a)(1).

[20] Sections 705(a), 1102(a)(1).

-19-

abstention is in the best interest of the parties and the estate, and will not jeopardize the rights, remedies, safeguards and legitimate expectations provided under the Code to the parties in interest. In short, a bankruptcy court should be reluctant to relinquish its jurisdiction over core proceedings, unless there is a specific showing abstention will better serve the parties in interest and the estate.

In *B & M Properties*, the District Court found the state circuit court action was only related to the underlying bankruptcy case. 342 B.R. at 632. A bankruptcy court must abstain from hearing a "related to" proceeding if there is no federal jurisdiction absent the bankruptcy case, the action is commenced in state court, and there can be a timely adjudication in state court. 28 U.S.C. § 1334(c)(2). The state court action in *B & M Properties* involved a lien claimed against property of the estate,[21] and the debtor as owner of that property was a necessary party to that action.[22] *Lily Flagg Bldg. Supply Co., supra.*; *Sorsby v. Woodlawn Lumber Co.*, 202 Ala. 566, 81 So. 68 (1919); *Hughes v. Torgerson*, 96 Ala. 346, 11 So. 209 (1892). The court that determines the validity, extent and priority of the lien must inevitably determine whether the lien is enforceable. An unenforceable and, therefore, unperfected lien, is subject to avoidance by a trustee or debtor-in-possession and disallowance as a secured claim. Avoidance actions are core proceedings. 28 U.S.C. §

---

[21] 28 U.S.C. § 1334(e)(1) provides that the district court in a bankruptcy case has exclusive jurisdiction of all the property of the debtor and the estate. The bankruptcy court is an unit of the district court. 28 U.S.C. § 151. By virtue of the Order of Reference, the bankruptcy court has the same jurisdiction as the district court under title 11of the U.S. Code over property of the estate. 28 U.S.C. § 157(a). Unless there are compelling reasons, it is inappropriate for a bankruptcy court to abstain from adjudicating a critical issue in a core proceeding that involves property of the estate over which the bankruptcy court has exclusive jurisdiction. There are no such compelling reasons in this case, especially since Welch is not hindered by the Code from perfecting his lien.

[22] Apparently after the involuntary bankruptcy was commenced, the debtor in *B & M Properties* was dismissed from the state court action. The debtor was the property owner, and it is difficult to understand how the litigation could go forward in state court without the debtor joined as a party. Perhaps after the bankruptcy petition was filed the debtor was dismissed by the state court, and the lien suit was put on administrative hold pending the outcome of the bankruptcy case.

-20-

157(b)(2)(F),(H). If these additional factors had been addressed, perhaps the District Court in *B & M Properties* would have found the state court action involved core bankruptcy proceedings arising under the Code, potentially having a significant impact on property of the bankruptcy estate and parties in interest, and was not merely a proceeding related to the underlying bankruptcy case.[23]

In the instant case, this Court will not abstain from adjudicating issues that are core proceedings. Such proceedings include the determinations of the validity, extent and priority of Welch's lien and the inseparable issue of perfection. They also include the adjudication of whether the monetary claim underlying Welch's lien should be allowed as a secured or unsecured claim,[24] an adjudication which also requires a determination of perfection of the lien. Sections 362(b)(3) and 546(b)(2) permit Welch to take whatever steps are necessary to perfect his lien; thus this Court's refusal to abstain does not interfere with Welch's perfection of his lien, assuming it can be perfected.

## ORDER:

THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that, for the reasons stated above, the relief requested in the Motion and the Supplemental Motion is hereby DENIED, but such denial is without prejudice for Welch to seek similar relief in the event the Trustee later abandons the Property, or Welch can prove he holds an interest in the Property and such interest is not adequately protected. This Memorandum Opinion and Order shall constitute a judgment entered pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure.

---

[23] The District Court did hold that "[a]fter perfection . . . the Bankruptcy Court has the power to determine the relative priority of this lien." 346 B.R. at 855.

[24] 28 U.S.C. § 157(b)(2)(B); Sections 502, 506.

Case 07-40947-JJR7    Doc 74    Filed 01/11/08    Entered 01/11/08 16:25:25    Desc Main
Document    Page 21 of 22

Dated:  January 11, 2008

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

-22-